CANNON COUNTY BOARD
OF EDUCATION

v.

Goldy WADE, et al.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Aug. 6, 2004 Session.

Jan. 27, 2005.

Permission to Appeal Denied by
Supreme Court Oct. 24, 2005.

Robert G. Wheeler, Jr., and Samuel L. Jackson, Nashville, Tennessee, for the appellant, Cannon County Board of Education.

Richard L. Colbert and Marty S. Turner, Nashville, Tennessee, for the appellees, Goldy Wade and Cannon County Education Association.

## OPINION

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and WILLIAM B. CAIN, J., joined.

School Board filed a Declaratory Judgment action pursuant to Tenn.Code Ann. § 29–14–101, et seq., to avoid binding arbitration with a non-tenured teacher concerning the School Board's decision to not extend the teacher's contract of employment beyond its one-year term. Defendants, the teacher and the education association, filed a Tenn. R. Civ. P. 12.02(6) Motion to Dismiss. Finding that the parties had entered into a binding agreement to submit such grievances to arbitration, the trial court granted the motion holding that there was no state of facts the School Board could prove that would warrant relief. We are unable to conclude that there is no state of facts the School Board can prove that would warrant relief. Moreover, Tenn. R. Civ. P. 12.02(6) motions are rarely appropriate in declaratory judgment actions. Therefore, we vacate the judgment, reinstate the complaint and remand the matter for further proceedings.

The Cannon County Board of Education (the School Board) filed this Declaratory Judgment action pursuant to Tenn.Code Ann. § 29–14–101, et seq. The School Board filed the action to avoid arbitration with Mr. Goldy Wade, a non-tenured teacher, concerning the School Board's decision to not extend Mr. Wade's contract of employment for another school year. It requested a declaration by the court that the matters in dispute were not appropriate for arbitration, that there was no basis for a "grievance" because the contract of employment expired by its own terms.

Initially, the only defendant was Mr. Wade. Shortly after the complaint was filed, the Cannon County Education Association (the Association) intervened and, along with Mr. Wade, promptly filed a Tenn. R. Civ. P. 12.02(6) motion to dismiss the complaint in order to require the School Board to engage in binding arbitration. The essence of the motion was that since the parties had committed to arbitration as the forum for resolving their disputes, the complaint failed to state a claim upon which relief could be granted because the court was precluded from hearing a dispute which the parties had agreed to resolve by arbitration. The defendants relied on *D & E Construction Company, Inc. v. Robert J. Denley Company, Inc.*, 38 S.W.3d 513, 518 (Tenn.2001) which stands for the proposition that parties to a collective bargaining agreement who have agreed to arbitrate their disputes are bound by the terms of their arbitration agreement. The defendants also cited *United Steelworkers of America v. Warrior & Gulf Navigation Company*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960) which held that the trial court's inquiry was confined to the question of whether the parties agreed to arbitrate the grievance at issue.

The School Board countered, arguing that the matters in dispute were not within the scope of their agreement because there was no provision in the agreement with Mr. Wade that required the School Board, or its Director of Schools, to extend the term of a contract of employment for non-tenured teachers that expired by its own terms after one year. Specifically, the School Board argued that Mr. Wade was not fired and was not sanctioned; to the contrary, his contract was merely not extended beyond the specified term of one year.

The trial court disposed of the case by ruling on a Tenn. R. Civ. P. 12.02(6) motion to dismiss the complaint because it failed to state a claim upon which relief could be granted. Thus, the issue for this court to consider is whether the trial court erred in holding that the School Board's complaint failed to state a claim upon which relief could be granted, thus requiring the School Board to engage in arbitration proceedings with Mr. Wade.

The order from which this appeal arises granted a motion to dismiss pursuant to Tenn. R. Civ. P. 12.02(6). The Tennessee Supreme Court has identified the standard of review for appellate courts when one appeals the grant of a motion to dismiss. *See Trau–Med of Am., Inc. v. Allstate Ins. Co.,* 71 S.W.3d 691, 696–97 (Tenn.2002). The purpose of a Tenn. R. Civ. P. 12.02(6) motion to dismiss is to determine whether the pleadings state a claim upon which relief can be granted. Such a motion only challenges the legal sufficiency of the complaint. It does not challenge the strength of the plaintiff's proof. *See Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A.,* 986 S.W.2d 550,

554 (Tenn.1999). For purposes of a Tenn. R. Civ. P. 12.02(6) motion, the moving party is deemed to have admitted the truth of all relevant and material averments in the complaint. *Cook v. Spinnaker's of Rivergate, Inc.,* 878 S.W.2d 934, 938 (Tenn. 1994). Thus, when reviewing a motion to dismiss we must liberally construe the complaint, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences. *See Pursell v. First American National Bank,* 937 S.W.2d 838, 840 (Tenn.1996). A complaint should not be dismissed for failure to state a claim unless it appears that the plaintiff can prove no set of facts in support of the claim that would warrant relief. *See Doe v. Sundquist,* 2 S.W.3d 919, 922 (Tenn.1999); *Fuerst v. Methodist Hospital South,* 566 S.W.2d 847, 848 (Tenn.1978).

The relevant facts are limited to those stated in the complaint because there was no answer to the complaint, no discovery and of course no trial. The few facts to be found in the record are as follows. Mr. Wade was employed as the "In School Suspension Teacher" at Cannon County High School from 1999 through 2002, comprising three school years.[1] At the conclusion of the third year, Mr. Wade's contract of employment was not renewed by the School Board. Mr. Wade filed a grievance in June 2002 wherein he alleged that his non-renewal was a form of discrimination. As part of the grievance protocol, Mr. Wade also requested that the matter be submitted to binding arbitration pursuant to the collective bargaining agreement between the School Board and the Association.[2] It was at this point that the School

---

1. Mr. Wade had been employed for three one-year terms as a non-tenured teacher pursuant to three contracts between Mr. Wade and the School Board.

2. The grievance procedure in Article VI has five steps, arbitration is the fifth and final step.

Board filed the complaint to avoid arbitration.

In its memorandum opinion, the trial court identified the issue before it as follows, "whether a non-tenured teacher who is given notice that he will not be offered another teaching contract after the expiration of his third one-year contract is entitled to benefit from the grievance procedure provided by the [collective bargaining agreement]." The trial court also made a number of findings including the following:

Defendant Goldy Wade was employed as an in-school suspension teacher for Cannon County. He taught for three years and was not a tenured employee. Mr. Wade taught each year under the terms of an individual one year contract which contained no provisions for renewal. Near the end of his third year as a teacher, notice was given to Mr. Wade that a contract would not be offered to him for the next school year. Mr. Wade filed a grievance procedure in accordance with the agreement between the Cannon County Board of Education and the Cannon County Education Association which was then in force. Dissatisfied with the results of each of the first four grievance procedures, outlined by the [collective bargaining agreement], ... Mr. Wade gave notice, ... that he sought to proceed to the fifth step outlined by the agreement, that of arbitration. The Board of Education filed this suit seeking our declaratory judgment that such was not proper.

The trial court placed great emphasis on Article XXVIII of the collective bargaining agreement which provides:

Any individual agreement or contract between the employer and an employee heretofore or hereafter executed shall be subject to and consistent with the terms and conditions of this Agreement. If an individual contract or agreement contains any language inconsistent with this Agreement, this Agreement shall be controlling.

The reason this provision is significant is that Mr. Wade had no right or expectation of continued employment beyond the one-year term, at least not pursuant to his individual employment agreement; however, the collective bargaining agreement afforded "teachers" rights, in addition to those stated in individual employment agreements. Moreover, the collective bargaining agreement provided that these additional rights "shall be controlling" if the "language" between the two agreements is "inconsistent." One such additional right required the School Board to give teachers notification in writing of any alleged deficiencies, indicating expected corrections, and indicating a reasonable period of correction. (Article XXIV, Section A) Another right mandated by the collective bargaining agreement stated that no teacher "shall be laid off except in cases of substantial change in the size and nature of the student population or unavoidable budgetary limitations." (Article XIV) The collective bargaining agreement also provided for certain due process provisions including the right to present witnesses and to have representation when being "reprimanded, warned, or disciplined for any infraction of rules or delinquency in professional performance."[3] (Article XXIV)

■ Though but a few facts are in the record, it is evident from these facts that the collective bargaining agreement between the School Board and the Association pertains to all teachers, including non-

3. The collective bargaining agreement provides for two forms of "due process." One is that just stated in Article XXIV and the other appears in Article VI, which is the "grievance procedure" that includes arbitration (Article VI, Step 5).

tenured teachers. This is because the collective bargaining agreement makes no distinction between tenured and non-tenured teachers and it covers all persons with "certificates" to teach.[4] Mr. Wade, though non-tenured, had a certificate to teach. Thus, Mr. Wade is a third party beneficiary of the collective bargaining agreement, at least during the term of his employment agreement. As a result, Mr. Wade is entitled to the due process provisions under Article VI of the collective bargaining agreement to the extent the grievance pertains to his contractual rights. Whether the dispute concerning the School Board's decision to not extend Mr. Wade's contract is such a grievance and therefore a proper subject for binding arbitration (the fifth step in the official grievance procedure) is vigorously disputed.

The two agreements are indeed inconsistent. Mr. Wade's individual agreement expressly states it is for one year, and it does not provide for an extension or continuance of employment beyond the one year; yet, the collective bargaining agreement expressly limits the School Board's authority to "lay off" a teacher. But is this the type of "inconsistent" language that activates the "controlling" provision under Article XXVIII of the collective bargaining agreement? Moreover, was Mr. Wade "laid off" or did his employment agreement merely expire? The healthy tension presented by the two agreements is that Mr. Wade is clearly entitled to due process pursuant to the collective bargaining agreement to the extent a grievance pertains to his employment, but is he enti-

tled to due process for a grievance that *arguendo* pertains to disputed rights (employment) subsequent to the expiration of the term of his individual employment agreement. Stated another way, is Mr. Wade entitled to invoke the due process provision of the collective bargaining agreement in order to afford an arbitrator the authority to "extend" the term of his contract of employment "beyond" the one-year term of his individual employment agreement?

Should this matter go to trial, the ultimate issue will be whether a non-tenured teacher, whose contract of employment for a specific term was not extended, is entitled to employ binding arbitration pursuant to step five of the grievance procedure to "extend" the term of his employment contract beyond the term expressly provided in the individual contract. The essence of the School Board's complaint is that the answer to the foregoing question is "no." The defendants insist the answer is "yes."

■ The standard of review applicable to Rule 12 motions to dismiss tells us that the School Board's complaint should not be dismissed for failure to state a claim *unless it appears that it can prove no set of facts in support of its claim that would warrant relief.* (emphasis added) *See Doe v. Sundquist,* 2 S.W.3d at 922; *Fuerst,* 566 S.W.2d at 848. We are unable to conclude that there is no set of facts the School Board can present that would warrant the relief sought, which is a determination by declaratory judgment that the School

4. Article II defines a "professional employee" as any person employed by the Board in a position which requires a certificate issued by the State Department of Education for service in public elementary and secondary schools of Tennessee supported in whole or in part by local, state or federal funds, and "teacher" or "employee" are defined to include any person included in the negotiations unit. The only professional employees excepted from these definitions are those designated by the Board as "management personnel" pursuant to Tenn.Code Ann. § 49–5–608.

Board is, or is not, contractually obligated to arbitrate Mr. Wade's grievance.

■ It should be further noted that Tenn. R. Civ. P. 12.02(6) motions are rarely appropriate in declaratory judgment actions. *See Glover v. Glendening,* 376 Md. 142, 829 A.2d 532, 539 (2003). The prevailing rule is that when a party seeking a declaratory judgment alleges facts demonstrating the existence of an actual controversy concerning a matter covered by the declaratory judgment statute, the court should not grant a Tenn. R. Civ. P. 12.02(6) motion to dismiss but, instead, proceed to render a declaratory judgment as the facts and law require. *Hudson v. Jones,* 278 S.W.2d 799, 804 (Mo.Ct.App. 1955); 1 WALTER H. ANDERSON, ACTIONS FOR DECLARATORY JUDGMENTS § 318, at 740 (2d ed.1951).

The Tennessee Supreme Court followed this protocol in *Frazier v. City of Chattanooga,* 156 Tenn. 346, 1 S.W.2d 786 (1928). A resident of Chattanooga sought a declaratory judgment concerning whether a private act conferring powers on the City of Chattanooga had been repealed by implication by another private act. The City filed a demurrer, being the former equivalent of today's Tenn. R. Civ. P. 12.02(6) motion to dismiss for failure to state a claim. Rather than ruling against the resident on the merits of the case, the trial court sustained the City's demurrer (dismissed the action). The Tennessee Supreme Court observed: "It seems to us that the better practice in a case brought under the Declaratory Judgment Law ... is to enter a decree, sometimes referred to as a 'declaration,' defining the rights of the parties under the issues made, even though such decree is adverse to the contentions in the bill." *Frazier,* 1 S.W.2d at 786.

■ The purpose of a declaratory judgment action is to resolve a dispute, afford relief from uncertainty with respect to rights, status, and other legal relations. *Snow v. Pearman,* 222 Tenn. 458, 436 S.W.2d 861, 863 (1968); Tenn.Code Ann. § 29–14–103 (2000). The fact that the party seeking declaratory relief is not entitled to the judgment sought (that it is on the losing side of the controversy) does not mean that the parties are not entitled to the relief from uncertainty that a declaratory judgment affords. Thus, a party seeking a declaratory judgment is not required to allege facts in its complaint demonstrating that it is entitled to a favorable decision.[5] *Maguire v. Hibernia Savings & Loan Society,* 23 Cal.2d 719, 146 P.2d 673, 678 (1944) (holding a complaint for declaratory relief which recites the dispute between the parties and prays for a declaration of rights, states facts sufficient to constitute a cause of action against a motion to dismiss for insufficiency of the complaint although it is on the wrong side of the controversy); *see also State v. Brown & Williamson Tobacco Corp.,* 18 S.W.3d 186 (Tenn.2000) (holding the essential element to be a justiciable controversy exists.)

In this case, the School Board sought a declaratory judgment regarding its rights and obligations under the collective bargaining agreement and state law. There is no question that an actual controversy exists and that the subject of the dispute is covered by Tenn.Code Ann. § 29–14–103. Accordingly, the trial court should not have granted the Tenn. R. Civ. P. 12.02(6) motion to dismiss. Instead, the court should have required the defendants to file

---

5. There may be exceptions to this principle but it is not necessary that we articulate them to resolve this dispute.

answers and once the answers were filed the court could then determine whether this case was appropriate for summary judgment. If the trial court, in its discretion, determines that this is an appropriate case for summary judgment, then it should determine whether and under what conditions the School Board would be required to submit its decision not to renew Mr. Wade's contract to binding arbitration under the collective bargaining agreement.

Accordingly, we vacate the judgment dismissing the School Board's complaint and remand this matter to the trial court for further proceedings consistent with this opinion.

Costs of appeal are assessed against the appellees.